UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WALTER BROWN,

                              Petitioner,

        -against-                                      9:18-CV-0815 (LEK/CFH)

GERARD JONES,

                              Respondent.

_____

## DECISION AND ORDER

## I.      INTRODUCTION

        Petitioner Walter Brown seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

Dkt. No. 1 ("Petition"). Respondent opposes the Petition. Dkt. Nos. 7 ("Response"); 8

("Answer"); 9 ("State Court Record" or "SCR"); 9-1 ("Transcript"). Petitioner filed a reply to

Respondent's Response. Dkt. No. 12 ("Traverse").

## II.     BACKGROUND

        The facts surrounding the underlying criminal conviction are not in dispute. As

summarized by the New York State Appellate Division, Fourth Department, and as is relevant to

the Petition, Petitioner pled guilty to second-degree criminal possession of a weapon. People v.

Brown, 160 A.D.3d 1426 (N.Y. App. Div. 4th Dep't 2018).

### A.  Indictment

        On August 22, 2013, Petitioner was charged with third-degree criminal sale of a

controlled substance; third-, fourth-, and seventh-degree criminal possession of a controlled

substance; and second-degree criminal possession of a weapon for events that occurred on or

about June 17, 2013, June 27, 2013, and July 2, 2013. See SCR at 22, 25–26.

**B. Plea Proceedings**

On November 27, 2013, Petitioner appeared, with retained counsel, at a plea hearing. Dkt. No. 9-1 at 1–11. The Court began by instructing Petitioner "to listen carefully to what [the attorneys are going] to say because when they're done [the judge was] going to ask [Petitioner] about this proposed disposition, [Petitioner's] understanding of it, as well as the consequences of pleading guilty." Id. at 3. Petitioner expressed his understanding. See id.

The prosecutor then placed the terms of the plea on the record, specifically that Petitioner was prepared to plead guilty "to the seventh count of the indictment, criminal possession of a weapon in the second degree, with a ten-year determinate sentence," and that Petitioner would then be released from custody because there were "matters that he needs to tend to[.]" Dkt. No. 9-1 at 3. The prosecutor went on to warn Petitioner that any re-arrest or failure to cooperate or appear would mean that the sentencing court would "not be bound by the ten years [and] . . . could sentence [Petitioner] up to fifteen." Id. Finally, Petitioner would be subject to five years of post-release supervision. See id. The court asked Petitioner's counsel if there was anything else that needed to go on the record, and he responded, "[n]o . . . the [other] items that we[re] discussed at the bench [we]re ministerial." Id. at 3–4.

Petitioner was then asked whether he wished to plead guilty to resolve all outstanding charges. Dkt. No. 9-1 at 4. Petitioner acknowledged that he did. See id. The court then discussed the myriad rights which Petitioner was forfeiting by pleading guilty: the right to a jury trial and the prosecution's burden to prove Petitioner guilty beyond a reasonable doubt; the right to, through his counsel, call witnesses and confront and cross-examine them; and Petitioner's right to take the stand and testify. Id. at 4–5. Petitioner indicated that he understood all of the rights

2

which he was giving up, that he was not under the influence of drugs or alcohol or otherwise impaired, that he had no questions for his counsel, and that he was "pleading guilty freely and voluntarily and because, in fact, [he was] guilty." Id. at 4–6. Petitioner denied that anyone had threatened or otherwise coerced him. Id. at 6–7. The court engaged in a colloquy with Petitioner whereupon he admitted to possessing a loaded firearm in violation of the Penal Law and pled guilty to that charge. Id.

Petitioner also admitted to the special information, which identified an earlier felony conviction for which Petitioner was found guilty, making Petitioner a second felony offender. Dkt. No. 9-1 at 8–9. Petitioner also was presented, and signed, a waiver of appeal form. Id. at 10. The court pledged to sentence petitioner as promised; the sentencing hearing was scheduled; and, prior to the conclusion of the plea hearing and Petitioner's release, he was again admonished that if he were to get into any further legal trouble between now and his sentencing his "sentencing exposure . . . [wa]s up to fifteen years in state prison." Id. at 10. Petitioner again indicated his understanding. See id.

### C.  Sentencing Hearing

Prior to the sentencing hearing, the People sent the sentencing court two letters on June 18 and July 30, 2014. See SCR at 32–33, 100–01, 103–04. The first letter indicated that "[t]he [Petitioner] was . . . released from custody [after his guilty plea] to work with the Onondaga County Sheriff's Office in an effort to reduce his sentence by targeting his suppliers or other large dealers of heroin and those who have possessed illegal firearms." See id. at 32, 100. The letter indicated that Petitioner went "into neighborhoods [and] targeted street level dealers"; however, Petitioner's information resulted only in "the arrest of two defendants neither of which

3

ha[d] the criminal record of the [Petitioner.]" Id. at 32–33, 100–01. Therefore, the Sheriff's Office felt that Petitioner was failing to target his suppliers or those involved with illegal gun possession. Id. at 32, 100. The letter was intended to inform the court that, while Petitioner would "receive some consideration for the work that he did . . . it w[ould] not be the home run that [Petitioner] was hoping for," the Sheriff's Office was no longer interested in working with Petitioner, and Petitioner could be sentenced immediately. Id. at 32–33, 100–01.

The second letter explained that Petitioner's cooperation also led to "the recovery of a handgun from a stored backyard location." See SCR at 103. However, Petitioner's debriefing agreement stated that Petitioner would receive sentencing credit for work which "leads to the arrests and prosecution of others; therefore, "the recovery of a community gun . . . from a backyard d[id] not result in [Petitioner] receiving any credit whatsoever." Id. at 103–04. Conversely, because Petitioner retrieved the gun by himself, against the direction of the District Attorney's Office and without law enforcement present, Petitioner "was not working with the police during the time he retrieved and held onto the gun [and therefore] was . . . committing a crime for which he c[ould] be charged." Id. at 104.

On August 1, 2014, Petitioner appeared with his counsel for his sentencing hearing. Dkt. No. 9-1 at 12–22. The court reviewed the plea agreement, again outlining that Petitioner had pled guilty to second-degree criminal possession of a weapon "with an agreed upon sentence at the time of no worse than a determinate period of incarceration of ten years along with five years of post-release supervision." Id. at 13. The prosecution requested an eight-year determinate sentence based on the reasoning outlined in the June and July 2014 letters to the court. Id. at 14.

Petitioner's counsel requested a more lenient sentence, citing Petitioner's medical conditions

along with the best efforts which Petitioner put forth during the cooperation period. Id. at 15. Petitioner was then provided with an opportunity to speak, at which time Petitioner requested leniency from the judge for doing all that he could with respect to his cooperation, his medical conditions, and his improved personal and professional situation. Id. at 16–18. Petitioner concluded by saying that he "had no idea that [he] was copping out and agreeing to anything . . . more than a five year sentence, which [he] was told . . . at th[e] time that pending [his] cooperation that five year sentence would be reduced to possibly probation." Id. at 19.

After hearing all the arguments, the sentencing court observed that there was a "substantial disagreement between [Petitioner and the prosecution] as far as the level and extent of [Petitioner's] cooperation." Dkt. No. 9-1 at 19. The court concluded that "the record was pretty clear that the deal at that time was a determinate ten years plus five year period of post-release supervision. [Petitioner was] released . . . [and t]hen it became no worse than ten years." Id. Accordingly, the court imposed a determinate eight-year sentence with five years of post-release supervision. Id. at 20.

### D.  First Motion to Vacate Judgment

Petitioner first moved to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10 on January 12, 2016. See SCR at 70–77. Petitioner argued that he was entitled to relief because: (1) his plea was invalid as it was not knowing, voluntary, or intelligent, id. at 73–75; and (2) his counsel was constitutionally ineffective, id. at 75–77. Specifically, petitioner argued that his "plea was induced by false promises that w[]ere never honored," by his counsel or the prosecution, namely that "the agreed upon sentencing cap was a term not to exceed [five] years with an understanding that the prosecutor [would in fact] recommend a [much] lighter sentence in exchange for [Petitioner's] cooperation with law enforcement." Id. at 75–76. Further, Petitioner's counsel

5

failed to request the withdrawal of Petitioner's plea when Petitioner's counsel knew the prosecution "fell short of their promise to [Petitioner]." Id. at 76.

The prosecution opposed the motion. See SCR at 85–95. In support of the opposition, the prosecution included the Narcotics Bureau Debriefing Agreement. Id. at 97–98. The document was dated August 14, 2013 and outlined the terms of Petitioner's cooperation with the District Attorney's Office and ability to obtain a more favorable plea. Id. at 86, 97–98. Specifically, the document indicated that if Petitioner was convicted of every crime for which he was indicted, he would face a sentence between nine and thirty-nine years. Id. at 97. Accordingly, while the agreement did not contain any promises to Petitioner, it did indicate that if the information he provided was deemed useful by the District Attorney's Office, "the prosecutor will contact [Petitioner] . . . and will attempt to negotiate a resolution of such charges." Id. at 97–98. The prosecution also included the June and July 2014 letters to the sentencing court which expressed law enforcement's desire to discontinue working with Petitioner. Id. at 32–33, 100–04.

The county court assigned Petitioner counsel and held a hearing. Dkt. No. 9-1 at 23–109. Petitioner's counsel presented testimony from Petitioner's fiancée and Petitioner. Id. at 26–63. The prosecution presented testimony from Paul Chapman, Esq., Petitioner's trial counsel. Id. at 66–100.

Petitioner's fiancée testified that, when she picked Petitioner up from jail after his plea hearing, Petitioner told her that he received a five-year plea bargain if he cooperated with law enforcement. Dkt. No. 9-1 at 27–30. Any information about Petitioner's plea deal came from Petitioner himself; his fiancée never heard Chapman or the prosecutor say that Petitioner's sentencing cap was five years. Id. at 30–31.

Petitioner then testified. Dkt. No. 9-1 at 32–63. Petitioner indicated that during the four

months Chapman represented Petitioner prior to his plea hearing, he only had two face-to-face meetings with Chapman. Id. at 34. Petitioner claims he was advised of the plea offer the same day of the plea hearing, in a ten-minute conversation just prior to entering the court. Id. at 35–36. Petitioner asserts that Chapman "said . . . that he negotiated a plea offer for five years if [Petitioner] pled guilty to the second degree possession of a weapon . . . he also indicated that [Petitioner] would be released [on his] own recognizance to collaborate and cooperate [with] the Sheriff's Department." Id.

Petitioner acknowledged that the transcript from the plea hearing says Petitioner has a maximum sentence of ten years; however, he maintained that he did not recall the prosecutor putting that time frame on the record because he "really wasn't focused, [he] was just enjoying and ecstatic about being released." Dkt. No. 9-1 at 37–39. Petitioner also acknowledged that the sentencing transcript clearly indicated that Petitioner's maximum sentence was ten years. Id. at 37. However, Petitioner did not correct the prosecutor because "[i]t wasn't [Petitioner's] opportunity to speak." Id. at 37–38.

Petitioner maintained that he never had a conversation with his counsel, Chapman, about the cap on his sentence being ten years and that he did not learn this fact until the day of his sentencing when the prosecutor explained that Petitioner's ten-year sentence was reduced to eight years in consideration for his cooperation. Id. at 41–42. Petitioner first was informed of the possibility of eight years when the prosecutor held up eight fingers upon entering the sentencing hearing. Id. This had not been discussed between Petitioner and Chapman. Id. Petitioner remained silent because he thought that Chapman would intervene to correct the misunderstanding. Id. at 42–43. Moreover, Petitioner did not know that he could move to vacate his plea at that time and was not informed of

7

such until after he was sentenced. Id. Petitioner concluded by saying that if he knew that his maximum sentencing exposure was ten years, rather than five, he never would have pled guilty. Id. at 44.

On cross-examination, the prosecution established that Petitioner had advocated for himself on several occasions. Id. at 45–50. Specifically, on July 16, 2013, Petitioner made a pro se motion for a reduction in bail and authored another letter to the court in the fall of 2013. Id. Petitioner also acknowledged that the debriefing agreement, which Petitioner signed, never mentioned a five-year cap and that, despite the express instructions from the judge during the plea hearing, Petitioner did not pay close attention to the terms of his plea agreement when they were placed on the record because he was not paying attention to the proceedings themselves. Id. at 50–52, 55–57.

The prosecution then presented its evidence, namely the testimony of Chapman. Id. at 66–100. Chapman testified that he had been practicing law for over thirty-six years. Id. at 66. Chapman explained that the promises made to Petitioner throughout the time period prior to and after the plea hearing were consistent with what is in the record, namely that "the more [Petitioner] help[s] the better [his] deal will be that is offered, ultimately for the judge to affirm." Id. at 69–70. Chapman recalled that the offer was made on September 18, 2013 for a ten-year sentence and cooperation with the District Attorney's Office for Petitioner's immediate release pending sentencing. Id. at 71–72. The offer was explained before that day and reaffirmed thereafter. Id. at 72. While Chapman could not recall the specific dates or times of when those conversations occurred, he maintained that it was his understanding that Petitioner would accept that offer. Id. at 74–75, 78–81, 93, 96. Chapman emphasized that he never told Petitioner that the offer included a five-year cap and simply said that the more Petitioner cooperated, the better his sentence would be.

Id. at 75, 82.

Chapman also specifically addressed Petitioner's argument that he should have intervened at sentencing. Id. at 94–95. Specifically, Chapman indicated that he did not ask for a recess because he felt that his understanding of the plea and Petitioner's concerns with his sentencing were already in the record: the judge had told Petitioner the sentencing cap was ten years, Chapman had told Petitioner the sentencing cap was ten years, and the prosecutor had told Petitioner the sentencing cap was ten years. Id. Finally, Chapman stated that he spoke to Petitioner several times with respect to the plea offer and Petitioner never indicated that he was confused about the terms of the deal or that he wanted to withdraw his plea. Id. at 98–99.

On April 18, 2016, the Onondaga County Court denied Petitioner's 440 motion. SCR at 135–38. The court held that a:

> [r]eview of the record . . . clearly shows that the [Petitioner] entered into a negotiated plea agreement whereby the [Petitioner] entered a plea of guilty to one count of Criminal Possession of a Weapon in the Second Degree as a predicate felon in return for a promised determinate sentence of no worse than ten years in state prison, to be followed by five years of post-release supervision. Under oath, [Petitioner] acknowledged that his plea was made freely and voluntarily, and that no other promises . . . had been made to induce his plea.

> Id. at 137. In sum, "it is abundantly clear that [Petitioner] was sentenced in accordance with the plea agreement as stated at the time of the plea." Id.

To the extent that Petitioner's testimony at the 440 hearing contradicted that of Chapman, the county court held that it "credit[ed] Chapman's version of events," because Petitioner failed to establish, "by a preponderance of evidence, that Chapman ever informed him that he would receive a sentence of no worse than five years if he provided cooperation to law enforcement."

9

SCR at 137–38. Therefore, the motion was denied. Id. at 138.

Petitioner filed an application for leave to appeal the denial on June 6, 2016. SCR at 140–41. The Fourth Department denied the application on August 16, 2016. Id. at 148.

### E.  Second Motion to Vacate Judgment

In papers dated November 16, 2016, Petitioner filed a second motion to vacate. SCR at 149–57. He again argued that he was entitled to relief because his counsel was constitutionally ineffective and used "deceit, deception, fraud, dishonesty, and misrepresentation," and "fail[ed] to properly advise [Petitioner] on his guilty plea." Id. at 149–50. The prosecution opposed the motion. Id. at 160.

In an order dated December 23, 2016, the county court denied Petitioner's motion. SCR at 162–63. The court held that Petitioner had "previously made an identical motion," and thus his claims had already been decided. Id.

Petitioner filed a pro se motion for leave to appeal on January 27, 2017. SCR at 165. The Fourth Department denied the application on April 17, 2017. Id. at 175. Petitioner sought leave to appeal the denial and, on July 24, 2017, the Court of Appeals held "that the application [wa]s dismissed because the order sought to be appealed from is not appealable . . . . " Id. at 176.

### F.  Direct Appeal

In a counseled brief to the Fourth Department, Petitioner argued that he was entitled to relief because (1) the waiver of the right to appeal was invalid and (2) the sentence was harsh and excessive. SCR at 1–16.  The prosecution filed an opposition to Petitioner's appeal. Id. at 51–63.

On April 27, 2018, the Fourth Department issued an order affirming Petitioner's

conviction. SCR at 65; accord People v. Brown, 160 A.D.3d 1426 (N.Y. App. Div. 4th Dep't

2018). The Appellate Division held that:

> [a]lthough [the Fourth Department] agree[s] with [Petitioner] that his
> waiver of the right to appeal is invalid because the perfunctory
> inquiry made by the County Court was insufficient to establish that
> the court engaged the [Petitioner] in an adequate colloquy to ensure
> that the waiver of the right to appeal was a knowing and voluntary
> choice . . . [the court] nevertheless conclude[d] that the sentence
> [was] not unduly harsh or severe.

> SCR at 65; Brown, 160 A.D.3d at 1426.

## III.   PRESENT PETITION

Petitioner contends that he is entitled to federal habeas relief because (1) his plea was invalid

as it was not knowing, voluntary or intelligent, Pet. at 16–17; (2) Petitioner's counsel was

constitutionally ineffective for misleading Petitioner as to his maximum sentencing exposure, id. at

17–20; (3) Petitioner's waiver of appeal was "invalid because the colloquy d[id] not establish that

[Petitioner] understood the nature and scope of the appeal waiver," id. at 20; and (4) Petitioner's due

process rights were violated when he was sentenced to eight years of incarceration instead of the five

years, or even probation, that would be consistent with the quality of the cooperation Petitioner felt

he provided, id. at 21.

Respondent opposes the Petition. See Resp. Mem. Specifically, Respondent argues that

Petitioner's counsel did not mislead him; therefore, Petitioner's guilty plea was valid. Id. at 13–16.

Second, Respondent contends that Petitioner's arguments that his plea waiver was invalid have

already been granted by the state courts; however, Petitioner's ultimate sentencing comported with

state sentencing guideliness and therefore was not a violation of his constitutional rights. Id. at

16–17.

Petitioner filed a reply. See generally Traverse. Petitioner reiterates the arguments he asserted in his 440 motion, concluding that "[b]y the testimony of the petitioner, it clearly shows overwhelming and convincing evidence that the plea was in no manner knowing, voluntary or intelligent, and should not be considered such." Id. at 3. Further, Petitioner argues that because Chapman could not remember any specifics about the date or time of his conversations with Petitioner when he was counseling him on the plea offer, that is evidence of his ineffectiveness. Id. at 3–4. Petitioner clarifies that he "never claimed or argued that the sentence was excessive in this petition," rather that his plea was "induced by an unkept promise" and as such, Petitioner should receive that which he bargained for: a five-year sentence. Id. at 5–6.

## IV.    DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)–(2); Cullen v. Pinholster, 563 U.S. 170, 180–81, 185 (2011); Premo v. Moore, 562 U.S. 115, 120–21 (2011); Schriro v. Landrigan, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." Felkner v. Jackson, 562 U.S. 594, 5988 (2011) (per curiam) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

12

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" Nevada v. Jackson, 569 U.S. 505, 508–09 (2013) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)); see also Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires a petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting Richter, 562 U.S. at 103)).

Additionally, the AEDPA forecloses "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Parker v. Matthews, 567 U.S. 37 (2012) (per curiam) (quoting Renico, 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. See Wood v. Allen, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." Schriro, 550 U.S. at 473–74 (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." Lewis v. Conn. Comm'r of Corr., 790 F.3d 109, 121 (2d Cir. 2015). Finally, "[w]hen a

state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" Johnson v. Williams, 568 U.S. 289, 301 (2013).

### B. Plea

Petitioner argues that his testimony from his 440 hearing demonstrates that he was improperly informed that his plea would have a five-year maximum sentence instead of a ten-year maximum and, had Petitioner known that fact, he never would have pled guilty. Respondent contends that Petitioner's claims are meritless because the Fourth Department reasonably applied Supreme Court precedent in rejecting them.

In order to comply with constitutional due process protections, a guilty plea must be knowing, voluntary, and intelligent. See United States v. Ruiz, 536 U.S. 622, 628–29 (2002) (citing Boykin v. Alabama, 395 U.S. 238, 243 (1969)); Brady v. United States, 397 U.S. 742, 748 (1970). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the [petitioner]." Ferrer v. Superintendent, 628 F. Supp. 2d 294, 304 (N.D.N.Y. 2008) (quoting Hill, 474 U.S. at 56) (quotation marks omitted). As a court in this District has explained:

> Applying this standard, to establish that a criminal defendant's guilty plea was knowingly, intelligently, and voluntarily entered the court must find, based upon the record of the relevant plea proceedings, that he or she 1) was competent to proceed and was fully aware of the nature of the charges faced; 2) had a rational and factual understanding of the proceedings; and, 3) was cognizant of the constitutional protections relinquished upon entry of the plea.

> Capra v. LeClair, No. 06-CV-1230, 2010 WL 3323676, at *9 (N.D.N.Y. Apr. 12, 2010) (citing Oyague v. Artuz, 393 F.3d 99, 106 (2d Cir. 2004)).

In evaluating whether a plea was knowing and voluntary, a court may consider, "among other things, [petitioner's] allocution statements." Carpenter v. Unger, No. 10-CV-1240, 2014 WL 4105398, at *19 (N.D.N.Y. Aug. 20, 2014) (citing United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997)). The Supreme Court has noted that:

> [T]he representations of the [petitioner], his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73–74 (1977); see also Padilla v. Keane, 331 F.. Supp. 2d 209, 217 (S.D.N.Y. Aug. 19, 2004 ("Where . . . [petitioner] . . . has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on [petitioner's] sworn statements and hold him to them.").

To the extent Petitioner contends that he was unaware of the ten-year sentencing cap because he had consistently been promised no more than a five-year sentence in exchange for pleading guilty and cooperating with law enforcement, the evidence in this case fully supports the county court's finding to the contrary. People v. Guynup, 159 A.D.3d 1223, 1225 (N.Y. App. Div. 3rd Dep't 2018). As the county court discussed, a review of the plain language of the record clearly shows that the judge, prosecutor, and Petitioner's counsel all testified that the agreed-upon sentence was no more than ten years of incarceration. SCR at 137; see also Dkt. No. 9-1 at 3 (prosecutor placing terms of the plea on the record and warning Petitioner that his failure to comply would potentially result in the court sentencing him to fifteen years instead of ten years in prison), 3–4 (Chapman agreeing that

15

all essential terms were on the record), 4 (court asking if Petitioner understood the agreement and still wished to plead guilty, and Petitioner indicating his agreement).

Petitioner's own words uttered while he was under oath confirm this conclusion; he testified that he understood the terms of the plea agreement, had no further questions for his counsel, wished to plead guilty, and was entering such plea freely and voluntarily without any coercion. SCR at 137; Dkt. No. 9-1 at 4–7. Petitioner's testimony that he really was not paying attention to the terms of the plea during the hearing are self-serving and wholly contradicted by the record and thus would be insufficient to entitle Petitioner to relief. See Blackledge, 431 U.S. at 73–74.

In short, Petitioner offered nothing substantial enough to overturn the presumption that representations in his plea allocution are valid. Under these circumstances, the county court's conclusions that the plea was voluntary and that Petitioner "was sentenced in accordance with the plea agreement as stated at the time of the plea" is neither contrary to nor an unreasonable application of clearly established precedent.

### C.  Ineffective Assistance of Counsel

Petitioner contends that his counsel was ineffective because Chapman misled Petitioner into believing that his maximum sentencing exposure was five years. Respondent argues that Petitioner fails to overcome the heavy burden imposed on petitioners to defeat the deferential standard applied toward state court decisions determining ineffective counsel claims.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different, and as a result, petitioner suffered prejudice. Premo v. Moore, 562 U.S. 115, 121-22 (2011); Strickland v.

Washington, 466 U.S. 668, 694 (1984). The standard "must be applied with scrupulous care" in habeas proceedings because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]" Premo, 562 U.S. at 122. "Strickland does not guarantee perfect representation, only a reasonably competent attorney." Harrington v. Richter, 562 U.S. 86, 110 (2011) (quoting Strickland, 466 U.S. at 687) (internal quotation marks and citations omitted). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Even if petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. Id. at 693–94.

The Strickland test applies "to challenges to guilty pleas based on ineffective assistance of counsel." Lafler v. Cooper, 566 U.S. 156, 162–63 (2012) (quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985)). To establish prejudice in this instance, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

This Court must view the state court decisions through a doubly deferential lens. See Cullen, 563 U.S. at 190. As found by the county court, Petitioner did not receive incompetent counsel because Petitioner failed to establish "by a preponderance of the evidence, that Chapman ever informed him that he would receive a sentence of no worse than five years[.]" SCR at 137–38. Despite Petitioner's arguments to the contrary, the record makes clear that the prosecution, Petitioner's counsel, Petitioner, and the trial court all were of the same mind set

17

during his plea, that Petitioner was pleading guilty to second-degree criminal possession of a weapon in return for a maximum ten-year sentence and immediate release so that he could cooperate with law enforcement to potentially further reduce his sentence. SCR at 137; see also Dkt. No. 9-1 at 3–4. This was further bolstered by the documents submitted to the sentencing court prior to Petitioner's hearing. Specifically, the June 18, 2014 letter reiterated the terms of the agreement, namely a ten-year maximum cap in exchange for release and cooperation, and the details of the helpfulness of Petitioner's cooperation. SCR at 32, 100. Furthermore, the record refutes Petitioner's allegations that he was subjectively unaware of his ten-year sentencing cap. As previously noted, Petitioner's sworn testimony during his plea proceedings indicated that he was of sound mind and body, had no further questions for his counsel, understood the terms and wished to plead guilty, and was freely pleading guilty, without coercion, because he was in fact guilty. Dkt. No. 9-1 at 4–7. Accordingly, pursuant to a doubly deferential standard of review, the state court did not unreasonably apply federal precedent in crediting Chapman's testimony and concluding that Petitioner was not misled about his sentencing exposure.

Further, while Petitioner claims that he never would have accepted the plea but for Chapman's misrepresentation, Petitioner's conclusory statement also fails to prove prejudice. The Narcotics Agreement indicated that, had Petitioner been found guilty of all the crimes charged in the indictment, his sentencing liability ranged from nine to thirty-nine years. SCR at 97. Conversely, the negotiated plea agreement, as demonstrated by the terms discussed during the plea hearing, was a maximum of ten years. SCR at 137; see also Dkt. No. 9-1 at 3–4. In sum, Petitioner's eight-year sentence was a favorable deal resulting in a notable reduction in the

amount of prison time to which Petitioner could have been subjected. Accordingly, the actions of counsel in securing the plea failed to meet the second Strickland prong as those actions were not prejudicial. Accordingly, Petitioner's request for habeas relief is denied.

**D.  Five- Versus Ten-Year Sentence**

Petitioner also asserts, as in his direct appeal, that his appeal waiver was invalid and that he is entitled to a reduction in his sentence so that the time which he is serving is commensurate with that to which he agreed. Respondent acknowledges that the state court found Petitioner's appeal waiver invalid; however, with respect to whether that finding impacted Petitioner's sentence, Respondent argues that the state court correctly held that it did not and Petitioner's sentencing exposure remained correctly within state guidelines. Therefore, the claim is not cognizable. Petitioner's claim that his waiver is invalid, alone, is moot because the state court has already determined that it was. However, to the extent the invalid waiver should result in a sentence reduction, for the aforementioned reasons, no reduction is warranted. Petitioner contends that he is not actually arguing that his ten-year cap is excessive; rather, he is entitled to only serve five years. Liberally construing Petitioner's claim and subsequent clarification, it appears to this Court that Petitioner seeks a sentence reduction to conform with the conditions of the plea deal that he asserts he entered.

To the extent Petitioner was attempting to put forth an Eighth Amendment claim with regard to his sentence or is explicitly contending his sentence was "harsh and excessive," such contentions are inadequate to provide habeas relief. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. "In the context of noncapital cases, the Eighth Amendment forbids only extreme sentences which are 'grossly

disproportionate' to the crime of conviction . . . [which] is 'applicable in only the exceedingly rare and extreme case.'" Mendoza v. Miller, No. 04-CV-1270, 2008 WL 3211277, at *4 (N.D.N.Y. Aug. 6, 2008) (quoting Lockyer v. Andrade, 538 U.S. 63, 72, 73 (2003)).  Whether Petitioner presents his claim as a violation of the Eighth Amendment by it being "cruel and unusual" or "harsh and excessive," the fact remains that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see also Taylor v. Connelly, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014) ("An excessive sentence claim may not provide grounds for habeas corpus relief where a petitioner's sentence is within the range prescribed by state law.").

Here, Petitioner pled guilty to one count of second-degree criminal possession of a weapon in violation of New York Penal Law § 265.03, a class C violent felony. Further, Petitioner was adjudicated a second felony offender. Therefore, under Penal Law § 70.06(6)(b), the court was required to sentence Petitioner to a determine sentence of between five and fifteen years. Further, Penal Law § 70.45(2) provides that a court must impose a period of five years of post-release supervision for individuals receiving a determinate sentence. Ultimately, the court sentenced Petitioner to a determinate eight-year period of incarceration with five years of post-release supervision, Dkt. No. 9-1 at 20, which "is within the range prescribed by [the Penal Law]." White, 969 F.2d at 1383. Since the sentence imposed was plainly within the statutory limits, and, thus, was also not grossly disproportionate to the crime, these grounds are denied.

## V.   CONCLUSION

Accordingly, it is hereby:

20

**ORDERED**, that the Petition (Dkt. No. 1) is **DENIED and DISMISSED** in its entirety; and it is further

**ORDERED**, that no Certificate of Appealability ("COA") shall issue because Petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:        April 7, 2021
                    Albany, New York

_____
Lawrence E. Kahn
Senior U.S. District Judge